1  **WO**

2

3

4

5

6

7                    IN THE UNITED STATES DISTRICT COURT

8                       FOR THE DISTRICT OF ARIZONA

9

10  GOLDEN SCORPIO CORP., an Arizona)     No. CV-08-1781-PHX-GMS
    corporation,                      )
11                                     )   **ORDER**
               Plaintiff,              )
12                                     )
    vs.                                )
13                                     )
                                       )
14  STEEL HORSE SALOON I, et al.,      )
                                       )
15             Defendants.             )
                                       )
16  ─────────────────────────────     )

17        Pending before the Court is the Motion for Default Judgment of Plaintiff Golden

18  Scorpio Corp. (Dkt. # 49.)  In the motion, Plaintiff requests an entry of judgment against

19  defendants Steel Horse Saloon IV, Steel-Horse.com, Steel Horse Grill and Saloon, and The

20  Steel Horse Saloon II ("defaulted defendants").  (*See id.*)  For the reasons set forth below,

21  the Court denies Plaintiff's motion and dismisses defendants Steel Horse Saloon IV, Steel-

22  Horse.com, Steel Horse Grill and Saloon, and The Steel Horse Saloon II from the action.

23                          **BACKGROUND**

24        Plaintiff Golden Scorpio is an Arizona corporation that operates a restaurant and bar

25  under the name STEEL HORSE.  Since 1997, Plaintiff has used STEEL HORSE as a

26  common law trademark in relation to its restaurant and bar services.  On October 19, 2004,

27  the United States Patent and Trademark Office registered the "STEEL HORSE with

28  motorcycle design" service mark to Plaintiff for restaurant services.

1    Defendant Steel Horse Saloon IV is a California business that operates a restaurant/bar

2    under the name STEEL HORSE SALOON in Victorville, California.  Plaintiff alleges that

3    Defendant Steel Horse Saloon IV "has its business advertised on the internet at

4    http://www.manta.com, under the name Steel Horse Saloon," and that this advertising is

5    available to Internet users in Arizona.  (Dkt. # 1 ¶ 13 and Ex. 5.)  The "advertisement"

6    appearing on the http://www.manta.com website contains only the local address, local

7    telephone number, and some basic information about Defendant Steel Horse Saloon IV.[1]

8    (*See id.* Ex. 5.)  In the Motion for Default Judgment, Plaintiff also presents evidence that

9    Defendant Steel Horse Saloon IV advertises its business on the Internet at

10    http://www.quickthrottle.com/Editions/CA/weekly_events.html, and in the nationally

11    distributed Quick Throttle magazine.  (Dkt. # 49 Pt. 4 at 3, Pt. 5 Ex. A.)  In the magazine and

12    on Quick Throttle's website, Defendant Steel Horse Saloon IV advertises its weekly "Bike

13    Night" and provides its local address and telephone number.  (*Id.*)  As is evident from the

14    URL and attached exhibit (*Id.* Ex. A), the advertisement appearing on the

15    http://www.quickthrottle.com website appears under a link to the California section of the

16    website. Outside of this Internet advertising, Plaintiff alleges no other contacts between

17    Defendant Steel Horse Saloon IV and the State of Arizona.

18    Defendant Steel-Horse.com is an Indiana business that operates the website

19    http://www.steel-horse.com to advertise motorcycle events, including events at restaurants.

20    Plaintiff alleges that Defendant Steel-Horse.com "has its business advertised on the internet

21    at http://www.steel-horse.com running food and motorcycle events under the name Steel

22    Horse," and that this advertising is available to Internet users in Arizona.  (Dkt. # 1 ¶ 15 and

23    Ex. 7.)  The http://www.steel-horse.com website provides information regarding events

24

25        [1]It is unclear whether Defendant Steel Horse Saloon IV is even responsible for the

26    information provided on the http://www.manta.com website.  Included above Defendant
      Steel Horse Saloon IV's address and phone number is the following language: "Is This Your

27    Company?"  (Dkt. # 1 Ex. 5.)  The Court, however, need not resolve this question and will

28    presume that Defendant Steel Horse Saloon IV is responsible for the information.

sponsored by Steel-Horse.com as well as the local telephone numbers and email addresses for various individuals associated with the business. Outside of this Internet advertising, Plaintiff alleges no other contacts between Defendant Steel-Horse.com and the State of Arizona.

Defendant Steel Horse Grill and Saloon is a Maryland business that operates a restaurant/bar under the name STEEL HORSE GRILL AND SALOON with its place of business in Taneytown, Maryland. Plaintiff alleges that Defendant Steel Horse Grill and Saloon "has its business advertised on the internet at http://print.metroguide.com . . . under the name Steel Horse," and that this advertising is available to Internet users in Arizona. (Dkt. # 1 ¶ 16 and Ex. 8.) The "advertisement" on the http://print.metroguide.com website provides only the local address and telephone number of Defendant Steel Horse Grill and Saloon.[2] In addition to this allegation, Plaintiff presents evidence that Defendant Steel Horse Grill and Saloon also advertises its business on the Internet at http://www.damnbikers.com/bars. The http://www.damnbikers.com/bars website provides the local address and phone number for Defendant Steel Horse Grill and Saloon, a map showing the location of the establishment, and some customer reviews. Outside of this Internet advertising, Plaintiff alleges no other contacts between Defendant Steel Horse Grill and Saloon and the State of Arizona.

Defendant The Steel Horse Saloon II is a Rhode Island business that operates a restaurant/bar under the name THE STEEL HORSE SALOON with its place of business in Portsmouth, Rhode Island. Plaintiff alleges that Defendant The Steel Horse Saloon II "has its business advertised on the internet at http://www.stretchharpo.com/steelhorsesaloon.htm under the name The Steel Horse Saloon," and that this advertising is available to Internet

---

[2]It is unclear whether Defendant Steel Horse Grill and Saloon is even responsible for the information provided on the http://print.metroguide.com website. Included on the website, below the address and phone number, is the following language: "This restaurant Profile Page is brought to you courtesy of the DiningGuide.com service." (Dkt. # 1 Ex. 8.) The Court, however, need not resolve this question and will presume that Defendant Steel Horse Grill and Saloon is responsible for the information.

1    users in Arizona.    (Dkt. # 1 ¶ 19 and Ex. 12.)    The advertisement on the

2    http://www.stretchharpo.com/steelhorsesaloon.htm website provides the local address and

3    telephone number, local driving directions, and a local map. Outside of this Internet

4    advertising, Plaintiff alleges no other contacts between Defendant The Steel Horse Saloon

5    II and the State of Arizona.

6         In July of 2008, Plaintiff sent cease and desist letters to the defaulted defendants

7    advising them of Plaintiff's trademark rights and urging them to halt "all usage of the terms

8    or any other colorable imitation of any of [Golden Scorpio's] STEEL HORSE mark." (Dkt.

9    # 62 Pt. 2 Ex. 1.)  After failing to respond to the cease and desist letters, Plaintiff sued the

10   defaulted defendants along with nine other business entities spread across the United States,

11   alleging federal and common law trademark infringement, unfair competition, and trademark

12   dilution. (*See* Dkt. # 1.) Plaintiff alleges that it is the defaulted defendants' advertising alone

13   that gives rise to minimum contacts between the defaulted defendants and the state of

14   Arizona sufficient for this Court to exercise personal jurisdiction.  On December 19, 2008,

15   default was entered by the Clerk of the Court against these four defendants due to their

16   failure to plead or otherwise defend. (Dkt. # 40.) On December 31, 2008, Plaintiff filed their

17   Motion for Default Judgment seeking monetary and injunctive relief against the defaulted

18   defendants.  (Dkt. # 49.)

19                                  **DISCUSSION**

20   **I.    Jurisdictional Standard for Default Judgment**

21        When considering whether to enter a default judgment, a court has "an affirmative

22   duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172

23   F.3d 707, 712 (9th Cir. 1999) ("To avoid entering a default judgment that can later be

24   successfully attacked as void, a court should determine whether it has the power, i.e., the

25   jurisdiction, to enter judgment in the first place."); *see also Williams v. Life Sav. & Loan*, 802

26   F.2d 1200, 1203 (10th Cir. 1986) ("In reviewing its personal jurisdiction . . . the court

27   exercises its responsibility to determine that it has the power to enter the default judgment.")

28   "[W]hen a court is considering whether to enter a default judgment, it may dismiss an action

1   *sua sponte* for lack of personal jurisdiction." *In re Tuli*, 172 F.3d at 712.  Where there are

2   questions about the existence of personal jurisdiction, however, a court should allow the

3   plaintiff the opportunity to establish that jurisdiction is proper. *Id.* at 713.  Accordingly, on

4   January 27, 2009, the Court directed Plaintiff to "file a memorandum and the factual record

5   supporting personal jurisdiction" over the defaulted defendants.  (Dkt. # 57 at 2.)  Plaintiff

6   filed a response on January 30, 2009.  (Dkt. # 62.)

7   **II.   Personal Jurisdiction**

8       **A.   Plaintiff Bears the Burden of Proof**

9       "The party seeking to invoke the court's jurisdiction bears the burden of establishing

10  that jurisdiction exists." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (citing *Data

11  Disc, Inc. v. Sys. Tech. Assocs.*, 557 F.2d 1280, 1285 (9th Cir. 1977)).  Because the Court is

12  resolving the motion to dismiss without holding an evidentiary hearing, Plaintiff "need make

13  only a *prima facie* showing of jurisdictional facts to withstand [dismissal]." *Ballard v.

14  Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995); *see also Brainerd v. Governors of the Univ. of

15  Alberta*, 873 F.2d 1257, 1258 (9th Cir. 1989).  That is, Plaintiff "need only demonstrate facts

16  that if true would support jurisdiction over [Defendant]." *Ballard*, 65 F.3d at 1498.

17      **B.   Substantive Personal Jurisdiction Standard**

18      "Personal jurisdiction over an out-of-state defendant is appropriate if the relevant

19  state's long arm-statute permits the assertion of jurisdiction without violating federal due

20  process." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-01 (9th Cir. 2004).

21  Because Arizona's long arm statute is co-extensive with federal due process requirements,

22  the jurisdictional analyses under Arizona law and federal due process are the same.  *See id.*

23  at 801; *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 559 (9th Cir. 1995); Ariz. R. Civ. P.

24  4.2(a).  Therefore, absent traditional bases for personal jurisdiction (*i.e.*, physical presence,

25  domicile, and consent), the Due Process Clause requires that nonresident defendants have

26  certain "minimum contacts" with the forum state such that the exercise of personal

27  jurisdiction does not offend traditional notions of fair play and substantial justice. *See Int'l

28  Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

1    "In determining whether a defendant had minimum contacts with the forum state such

2    that the exercise of jurisdiction over the defendant would not offend the Due Process Clause,

3    courts focus on 'the relationship among the defendant, the forum, and the litigation.'"

4    *Brink v. First Credit Res.*, 57 F. Supp. 2d 848, 860 (D. Ariz. 1999) (citing *Shaffer v. Heitner*,

5    433 U.S. 186, 204 (1977)).  If a court determines that a defendant's contacts with the forum

6    state are sufficient to satisfy the Due Process Clause, then the court must exercise either

7    "general" or "specific" jurisdiction over the defendant.  *See Ziegler v. Indian River County*,

8    64 F.3d 470, 473 (9th Cir. 1995)*; Helicopteros Nacionales de Colombia v. Hall*, 466 U.S.

9    408, 414-15 nn.8-9 (1984).  General jurisdiction refers to the authority of a court to exercise

10   jurisdiction even where the cause of action is unrelated to the defendant's contacts with the

11   forum.  *Helicopteros*, 466 U.S. at 408.  Specific jurisdiction refers to the authority of a court

12   to exercise jurisdiction when a suit arises out of or is related to the defendant's contacts with

13   the forum.  *Id.*  The nature of the defendant's contacts with the forum state, therefore, will

14   determine whether the court exercises general or specific jurisdiction over the defendant.  *Id.*

15                    **1.      General Jurisdiction**

16           A court may assert general jurisdiction over a defendant if the defendant engages in

17   "substantial" or "continuous and systematic" business activities, *Helicopteros*, 466 U.S. at

18   416 (citing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 446-47 (1952)), that

19   "approximate physical presence" in the forum state.  *Bancroft & Masters, Inc. v. Augusta*

20   *Nat. Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000) (explaining that the following factors are to

21   be considered in determining whether general jurisdiction may be exercised: "whether

22   defendant makes sales, solicits or engages in business in the state, serves the state's markets,

23   designates an agent for service of process, holds a license, or is incorporated there"); *see also*

24   *Brand v. Menlove Dodge*, 796 F.2d 1070, 1073 (9th Cir. 1986) (collecting cases where

25   general jurisdiction was denied despite the defendants' significant contacts with the forum

26   states)).   Here, Plaintiff argues in support of general jurisdiction over the defaulted

27   defendants, stating that the facts show "continuous and systematic contacts with the forum

28   state."  (Dkt. # 62 Pt. 2 at 8.)

The only jurisdictional facts Plaintiff alleges or for which it provides evidence are: (1) the defaulted defendants each advertised on the Internet and their advertising was available to Internet users in Arizona; and (2) Defendant Steel Horse Saloon IV advertised in a national magazine that was available in Arizona. (*See* Dkt. ## 1, 49, 62, 66.)   It is uncontested, however, that the defaulted defendants' places of business are in states other than Arizona, and Plaintiff does not allege that any of the defaulted defendants have ever engaged in business transactions or made sales in Arizona.  Plaintiff does not allege or argue that any of the defaulted defendants own property in Arizona, owe taxes in Arizona, or maintain offices, employees, telephone numbers, Post Office boxes or bank accounts in Arizona.   Nor does Plaintiff allege or argue that any of the defaulted defendants are registered or licensed to conduct business in Arizona, or that any have designated an agent for service of process in Arizona.  The Court, therefore, cannot exercise general jurisdiction over the defaulted defendants because their contacts neither qualify as "substantial" nor "continuous and systematic" so as to approximate their physical presence in Arizona. Therefore, while the defaulted defendants may have facilitated advertising which was available in Arizona, they were not doing business in Arizona, and so while they may have "stepped through the door, there is no indication that [they have] sat down and made [themselves] at home." *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1125 (9th Cir. 2002); *see also Gator.Com Corp. v. L.L. Bean*, 341 F.3d 1072, 1079 (9th Cir. 1997) ("This test requires both that the party in question clearly do business over the Internet, and that the Internet business contacts with the forum state be substantial or continuous and systematic.") (citations and quotation omitted); *GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1349-50 (D.C. Cir. 2000) (stating that mere operation of an interactive website "does not by itself show any persistent course of conduct by defendants in the [forum state]").

Therefore, Plaintiff has not made a *prima facie* showing of jurisdictional facts sufficient for the Court to exercise general jurisdiction against any of the defaulted defendants.

1

**2.      Specific Jurisdiction**

2      In the Ninth Circuit, specific jurisdiction may be exercised only if: (1) the defendant

3 *purposefully avails* himself of the privileges of conducting activities in the forum, thereby

4 invoking the benefits and protections of its laws, or purposely directs conduct at the forum

5 that has *effects* in the forum; (2) the claim *arises out of* the defendant's forum-related

6 activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice;

7 i.e., it is *reasonable*.  *See Bancroft*, 223 F.3d at 1086-87 (citing *Cybersell, Inc. v. Cybersell,*

8 *Inc.*, 130 F.3d 414, 417 (9th Cir. 1997)); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462,

9 472-76 (1985).

10      In discussing specific jurisdiction, the United States Supreme Court emphasized long

11 ago that "it is essential in each case that there be some act by which the defendant

12 purposefully avails itself of the privilege of conducting activities within the forum State, thus

13 invoking the benefits and protections of its laws."[3]  *Hanson v. Denckla*, 357 U.S. 235, 253

14 (1958).  More recently, however, the Supreme Court held that a court may also have specific

15 jurisdiction over a defendant where the intended effects of the defendant's non-forum

16 conduct were purposely directed at and caused harm in the forum state.  *Calder v. Jones*, 465

17 U.S. 783, 788-90 (1984); *see also Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155-56 (9th

18 Cir. 2006) (noting that purposeful direction analysis is appropriate when "all of [the

19 defendant's] action identified by [the plaintiff] is taking place outside the forum"); *Sinatra*

20 *v. Nat'l Enquirer*, 854 F.2d 1191, 1195 (9th Cir. 1988) ("[T]he decisions of this court have

21 interpreted the holdings of *Calder* and *Burger King* as modifying the purposeful availment

22 rubric to allow 'the exercise of jurisdiction over a defendant whose only contact with the

23 forum is the purposeful direction of a *foreign* act having an *effect* in the forum state.'")

24

25

26      [3]Plaintiff fails to identify conduct by any of the defaulted defendants that occurred in
Arizona that would support the purposeful availment concept.  *See Pebble Beach Co. v.*

27 *Caddy*, 453 F.3d 1151, 1155-56 (9th Cir. 2006) ("Evidence of availment is typically action
taking place in the forum that invokes the benefits and protections of the laws in the

28 forum.").

1   (quoting *Haisten v. Grass Valley Med. Reimbursement Fund*, 784 F.2d 1392, 1397 (9th Cir.

2   1986)) (emphasis in original). *But see Cybersell*, 130 F.3d at 420 (holding that the "effects"

3   test did not "apply with the same force" in a trademark infringement and unfair competition

4   action against a business entity in which the defendant's contact with Arizona arose only

5   from infringing use of the plaintiff's trademarks on the Internet but nonetheless holding that

6   "[defendant's] web page simply was not aimed intentionally at Arizona knowing that harm

7   was likely to be caused there to [plaintiff]").

8       In analyzing the "effects" test, a court applies the *Calder* test, in which the defendant

9   must have: "(1) committed an intentional act, (2) expressly aimed at the forum state, (3)

10  causing harm that the defendant knows is likely to be suffered in the forum state." *Dole*

11  *Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). Consistent with the effects

12  test, Plaintiff argues that "[i]t is clear, each of [the defaulted] defendants, by continuing to

13  advertise with websites or magazines available in Arizona[,] after Plaintiff's [cease and

14  desist] letters[,] purposefully directed their activities toward the State of Arizona." (Dkt. #

15  62 Pt. 2 at 6.) Keeping in mind that "[a] finding of 'express aiming' . . . does not mean 'that

16  a foreign act with foreseeable effects in the forum state[] always gives rise to specific

17  jurisdiction,'" *Dole*, 303 F.3d at 1112 (quoting *Bancroft*, 223 F.3d at 1087); *see also*

18  *Cybersell*, 130 F.3d at 418 ("Creating a site, like placing a product in the stream of

19  commerce, may be felt nationwide – or even worldwide – but, without more, it is not an act

20  purposefully directed toward the forum state.") (quotation omitted), and keeping in mind that

21  the purposeful availment requirement means that jurisdictional contacts must be significant

22  and substantial rather than "random, fortuitous or attenuated," *Burger King*, 417 U.S. at 475,

23  the defaulted defendants' conduct will be weighed to determine whether the exercise of

24  specific jurisdiction is proper.

25      The record before the Court clearly sets forth facts sufficient to establish an

26  intentional act on the part of the defaulted defendants. Plaintiff alleges and provides

27  supporting evidence that the defaulted defendants actively procured advertising on the

28  Internet for their respective businesses. Additionally, Plaintiff provides evidence that

1  Defendant Steel Horse Saloon IV procured advertising in Quick Throttle Magazine. These

2  acts, performed outside of Arizona, are sufficient to satisfy the intentional act requirement.

3        The next question is whether the defaulted defendants' intentional acts, *i.e.*, the

4  infringing advertisements, were expressly aimed or deliberately directed at Arizona. This

5  issue was clarified by the Ninth Circuit in *Schwarzenegger*. In that case, Arnold

6  Schwarzenegger filed suit in California against an Ohio car dealership for the unauthorized

7  use of his photograph in its advertisements. The Ninth Circuit concluded that the federal

8  court in California did not have specific jurisdiction over the Ohio dealership because, under

9  the effects test, it could not be said that the dealership had purposefully directed its actions

10  at California since the dealership's advertisements were targeted solely at Ohio consumers:

11          Schwarzenegger does not point to any conduct by Fred Martin
        in California related to the Advertisement that would be readily
12          susceptible to a purposeful availment analysis. Rather, the
        conduct of which Schwarzenegger complains – the unauthorized
13          inclusion of the photograph in the Advertisement and its
        distribution in the Akron Beacon Journal – took place in Ohio,
14          not California. Fred Martin received no benefit, privilege, or
        protection from California in connection with the
15          Advertisement, and the traditional quid pro quo justification for
        finding purposeful availment thus does not apply. Therefore, to
16          the extent that Fred Martin's conduct might justify the exercise
        of personal jurisdiction in California, that conduct must have
17          been purposefully directed at California.

18  *Schwarzenegger*, 374 F.3d at 803. The Ninth Circuit has made it clear that any intentional

19  conduct "must be targeted at a plaintiff whom the defendant knows to be a resident of the

20  forum state." *Bancroft*, 223 F.3d at 1087; *see also Goldberg v. Cameron*, 482 F. Supp. 2d

21  1136, 1146 (N.D. Cal. 2007) (holding that defendants who willfully infringed a plaintiff's

22  copyright and who acted with the intent to produce movies for worldwide distribution,

23  including in the forum state, sufficiently satisfied the purposeful direction requirement);

24  *Panavision Intern., L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998) (holding that a

25  defendant who "engaged in a scheme to register Panavision's trademarks as his domain

26  names for the purpose of extorting money from Panavision" was enough to "demonstrat[e]

27  that the defendant directed his activity toward the forum state). Accordingly, the Court must

28  determine whether the defaulted defendants facilitation or posting of advertisements on the

1    Internet or in a national magazine was conduct that was expressly aimed by the defaulted

2    defendants at Arizona.

3                         **a.    Internet Advertising**

4         Use of the Internet creates difficult problems of personal jurisdiction because the

5    Internet is not specifically targeted at people in any particular state.  *See CIVIX-DDI LLC v.*

6    *Microsoft Corp.*, 52 U.S.P.Q.2d 1501, 1503-06 (D. Colo. 1999) ("The Internet may represent

7    the latest and greatest challenge to questions of personal jurisdiction.").  In *Cybersell*, the

8    Ninth Circuit was confronted with the issue of whether an allegedly infringing use of a

9    service mark on a website on the Internet was a sufficient basis for the exercise of personal

10   jurisdiction in the state where the holder of the mark had its principal place of business.  130

11   F.3d at 415-20.  The court reasoned that "the likelihood that personal jurisdiction can be

12   constitutionally exercised is directly proportionate to the nature and quality of the

13   commercial activity that the entity conducts over the internet," *id.* at 419, and held that "the

14   essentially passive nature of [the defendant's] activity in posting a home page on the World

15   Wide Web that allegedly used the service mark of [the plaintiff] does not qualify as

16   purposeful activity invoking the benefits and protections of [the forum state]," *id.* at 418-19.

17   In making its ruling, the court specifically noted that the defendant did nothing to encourage

18   Arizona residents to visit the website, did not conduct business in Arizona, entered no

19   contracts with Arizona residents, earned no income from Arizona, received no telephone

20   calls from Arizona, and did not maintain an 800 telephone number.  *Id.* at 419.  The court

21   indicated that there must be "something more" to "indicate that the defendant purposefully

22   (albeit electronically) directed his activity in a substantial way to the forum state." *Id.* at 418.

23        In a more recent case, the Ninth Circuit applied the "effects" test in affirming a district

24   court's dismissal of a case for lack of personal jurisdiction.  *See Pebble Beach*, 453 F.3d at

25   1156.  In *Pebble Beach*, the defendant operated a bed and breakfast in southern England

26   called "Pebble Beach" and advertised the inn on the website www.pebblebeach-uk.com. *Id.*

27   at 1153.  The plaintiff, a golf course and resort located in California, had used "Pebble

28   Beach" as its trademark for 50 years.  Pebble Beach sued the operator of the bed and

1   breakfast for intentional infringement and dilution of its PEBBLE BEACH mark.  Because

2   all of the defendant's actions occurred outside of California, the court applied the "effects"

3   test and further defined the "something more" required under *Cybersell* as action directed at

4   the forum state such as individualized targeting of a forum resident.  *Id.* at 1155-56.  After

5   concluding that the defendant's "only substantial action is a domain name and non-

6   interactive web site," the court affirmed its position in *Cybersell* that a passive website alone

7   does not constitute express aiming.  *Id.* at 1157-58.  The court stated that "the fact that [the

8   defendant's] website is not directed at California is controlling."  *Id.* at 1158 ("[T]here can

9   be no doubt that we still require "something more" than just a foreseeable effect to conclude

10  that personal jurisdiction is proper . . . [and] an internet domain name and passive website

11  alone are not "something more . . . .").  Therefore, the determinative question here is whether

12  the defaulted defendants' advertising conduct satisfies the "something more" that is required

13  – whether any of their advertising conduct was expressly aimed at Arizona.

14          In this case, Plaintiff's evidence and allegations are insufficient to show that the

15  defaulted defendants purposefully directed their advertisements at Arizona.  Like *Pebble

16  Beach* and *Schwarzenegger*, where the plaintiffs "relie[d] almost exclusively on the possible

17  foreseeable effects . . . of a non-interactive advertisement," Plaintiff similarly relies on

18  advertising that, although having foreseeable effects in Arizona, was not shown to be

19  deliberately aimed at Arizona by the defaulted defendants.  Each of the websites alleged to

20  have been used by the defaulted defendants for advertising are passive in nature.  Indeed, the

21  Steel   Horse   advertisements   appearing   on   the   http://www.manta.com,

22  http://www.quickthrottle.com/Editions/CA/weekly_events.html, http://print.metroguide.com,

23  http://www.damnbikers.com/bars, and http://www.stretchharpo.com/steelhorsesaloon.htm

24  websites generally only contain the local address and telephone numbers for the relevant

25  defendant.  Plaintiff has not alleged or provided evidence that any of these third-party

26  websites are directed at Arizona residents or, if so, that any of the defaulted defendants were

27  aware of the specific audience.  Additionally, the http://www.steel-horse.com website

28  appears also to be essentially passive in nature and to only provide information regarding

1  events sponsored by Steel-Horse.com as well as the local telephone numbers and email

2  addresses for various individuals associated with the business.  Plaintiff fails to allege or

3  present evidence suggesting that the defaulted defendants (1) did anything to encourage

4  Arizona residents to visit the websites on which the allegedly infringing advertisements

5  appeared, (2) engaged in any business in Arizona, (3) entered into any contracts with Arizona

6  residents, (4) earned any income from Arizona, (5) received any telephone calls from

7  Arizona, (6) or maintained a toll-free telephone number.  Indeed, outside of Plaintiff's hits

8  on these websites, there is no evidence or allegation that any Arizona resident has ever

9  viewed the advertisements appearing on these websites.

10  Additionally, just because the defaulted defendants each had received a cease and

11  desist letter and were therefore aware of the existence of Plaintiff in Arizona, does not

12  transform their acts into acts expressly aimed at Arizona.  *See Pebble Beach*, 453 F.3d at

13  1158 (holding that the defendant's knowledge of the California Pebble Beach golf resort

14  "goes to the foreseeable effect prong of the 'effects test' and is not an independent act that

15  can be interpreted as being expressly aimed at California."); *Cybersell*, 130 F.3d at 416

16  (finding a lack of personal jurisdiction even though the plaintiff had corresponded with the

17  defendant alerting the defendant to the plaintiff's trademark rights and location).  Also, the

18  mere fact that some minor amount of competition may exist between Plaintiff and the

19  defaulted defendants is insufficient to support the proposition that the defaulted defendants

20  conduct was expressly aimed at Arizona.[4]

21

22

23  [4] *But cf. The Bear Mill, Inc. v. Teddy Mountain, Inc.*, No. 07-492, 2008 WL 2323483,
at *6 (D. Idaho May 7, 2008) (finding that "[t]he fact that the parties are competitors in the
24  teddy bear and franchise business, coupled with Defendant's knowledge of the location of
Plaintiffs' business" satisfies the "effects" test); *Precision Craft Log Structures, Inc. v. Cabin
25  Kit Co.*, No. 05-199, 2006 WL 538819, at *7 (D. Idaho Mar. 3, 2006) (finding that because
the parties were competitors and both parties sold throughout the United States, the
26  defendant's "alleged intentional actions were expressly aimed or directed at the forum state
and caused harm which the defendant knew would be suffered in the forum state where
27  Precision Craft had its principal place of business").
28

- 13 -

1    While the defaulted defendants' conduct in facilitating or posting advertisements on

2 the Internet were likely "foreign act[s] with foreseeable effects in the [Arizona],'" *Dole*, 303

3 F.3d at 1112, the jurisdictional contacts are too attenuated and lack the "something more"

4 required to exercise personal jurisdiction consistent with federal due process.  Therefore,

5 because the jurisdictional contacts for defendants Steel-Horse.com, Steel Horse Grill and

6 Saloon, and The Steel Horse II derive solely from passive Internet advertising, personal

7 jurisdiction cannot be exercised in Arizona.

8                                **b.    Magazine Advertising**

9    Defendant Steel Horse Saloon IV, however, in addition to passive Internet advertising,

10 also advertised its business in a national magazine that was available to Arizona residents and

11 delivered to at least one Arizona business – Plaintiff's.  (*See* Dkt. # 49 Pt. 4 at 3 ("[S]ince at

12 least November 2007, a listing has been advertised in Quick Throttle magazine, distributed

13 nationally . . . .").)  Plaintiff, however, presents no evidence suggesting that the editions of

14 Quick Throttle Magazine containing Defendant Steel Horse Saloon IV's advertisement were

15 meaningfully distributed in Arizona.  Plaintiff also provides no evidence suggesting that

16 Defendant Steel Horse Saloon IV even acquired any business in its California establishment

17 from Arizona residents as a result of its magazine advertising.  Nevertheless, Plaintiff argues

18 that "[Steel Horse Saloon IV] purposefully directed its infringing advertisements in . . . Quick

19 Throttle magazine, directly to Plaintiff's own Steel Horse Saloon [in] Phoenix, AZ."  (Dkt.

20 # 66 at 2.)

21    Nevertheless, Plaintiff's characterization of the inquiry is correct – whether Defendant

22 Steel Horse Saloon IV expressly aimed its advertisements at Arizona residents, including

23 Plaintiff.  *See Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1305

24 (10th Cir. 1994) ("We have previously held that evidence of mere placement of

25 advertisements in nationally distributed papers or journals does not rise to the level of

26 purposeful contact with a forum required by the Constitution in order to exercise personal

27 jurisdiction over the advertiser."); *Wines v. Lake Havasu Boat Mfg., Inc.*, 846 F.2d 40, 43

28 (8th Cir. 1988) (holding that an Arizona boat maker who advertised in national publications

1   was not subject to specific jurisdiction in Minnesota because the advertising was not aimed

2   at Minnesota); *Land-O-Nod Co. v. Bassett Furniture Indus., Inc.*, 708 F.2d 1338, 1341 (8th

3   Cir. 1983) (holding that national advertising appearing in a trade journal was insufficient to

4   support specific jurisdiction); *Hamilton v. Accu-Tek*, 32 F. Supp. 2d 47, 70 & n.30 (E.D.N.Y.

5   1998) (explaining that "advertisements placed in national publications such as trade

6   magazines have been held insufficient to support" either specific or general jurisdiction);

7   *Alsop v. Carolina Custom Products, Inc.*, No. EDCV 07-212-VAP, 2007 WL 2441025, at

8   *7 (C.D. Cal. June 29, 2007) ("Defendant has not targeted advertising or promotional

9   materials to residents of California because it advertises in motorcycle magazines that are

10  nationally distributed.  Less than one percent of the sales were to California residents during

11  the fifteen month period . . . and none of these sales included the allegedly infringing

12  products.").  Like the Internet advertising discussed above, however, there is no indication

13  that the Quick Throttle magazine advertising was purposefully aimed at residents of Arizona,

14  any more than residents of any other state, including California – the home of Defendant

15  Steel Horse Saloon IV and the likely target of its advertising.  Plaintiff fails to allege or

16  present evidence suggesting that Defendant Steel Horse Saloon IV (1) did anything to

17  encourage Arizona residents to view its advertisement, (2) engaged in any business in

18  Arizona, (3) entered into any contracts with Arizona residents, (4) earned any income from

19  Arizona, (5) received any telephone calls from Arizona, or (6) maintained a toll-free

20  telephone number.  Without this type of evidence, the Court is unable to conclude that

21  Defendant Steel Horse Saloon IV aimed its magazine advertising at either the residents of

22  Arizona or at Plaintiff.  Therefore, because the jurisdictional contacts for Defendant Steel

23  Horse Saloon IV derive solely from passive Internet advertising and national magazine

24  advertising not aimed at Arizona, personal jurisdiction cannot be exercised here.

25        Because the Court finds that Plaintiff has failed to meet its burden of establishing

26  personal jurisdiction under the "effects" test, the Court need not reach the second and third

27  inquiries in the test for specific jurisdiction – whether Plaintiff's claim arises out of the

28

1  defaulted defendants' forum-related activities and whether the exercise of jurisdiction would
2  be reasonable.

3  **CONCLUSION**

4  Because Plaintiff has not established that the defaulted defendants purposefully
5  availed themselves of the privilege of conducting activities within Arizona or purposefully
6  directed their activities at Arizona:

7  **IT IS THEREFORE ORDERED** that Plaintiff's Motion for Default Judgment (Dkt.
8  # 49) is **DENIED**.

9  **IT IS FURTHER ORDERED** that defendants Steel Horse Saloon IV, Steel-
10  Horse.com, Steel Horse Grill and Saloon, and The Steel Horse Saloon II are **DISMISSED**
11  for lack of personal jurisdiction.

12  DATED this 11th day of February, 2009.

13

14  _____
15  G. Murray Snow
   United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

- 16 -