**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| GOLDEN SCORPIO CORP., an Arizona corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>STEEL HORSE SALOON I, et al.,<br><br>    Defendants. | No. CV-08-1781-PHX-GMS<br><br>**ORDER** |

Pending before the Court is the Motion for Default Judgment of Plaintiff Golden Scorpio Corp. (Dkt. # 72.) In the motion, Plaintiff requests an entry of judgment against defendant Steel Horse Saloon V. (*See id.*) For the reasons set forth below, the Court denies Plaintiff's motion and dismisses Defendant Steel Horse Saloon V from the action.

**BACKGROUND**

Plaintiff Golden Scorpio is an Arizona corporation that operates a restaurant and bar under the name STEEL HORSE. Since 1997, Plaintiff has used STEEL HORSE as a common law trademark in relation to its restaurant and bar services. On October 19, 2004, the United States Patent and Trademark Office registered the "STEEL HORSE with motorcycle design" service mark to Plaintiff for restaurant services.

Defendant Steel Horse Saloon V is a business entity of an unknown nature, that allegedly operated a restaurant/bar under the trade name STEELHORSE SALOON in

1 Marion, Ohio, during a five-year period commencing around the year 2000.[1]  (*See* Dkt. # 72
2 at 12 ("Defendant STEEL HORSE SALOON V reigned during a five-year tenure."); Dkt.
3 # 76 Ex. B (State of Ohio Certificate of Registration of the trade name STEELHORSE
4 SALOON, indicating a date of first use of February 15, 2000).)  The restaurant/bar was
5 operated under the STEELHORSE SALOON trade name, which was registered to Debra
6 Coble, a resident of Ohio.  (*Id.*)

7 On September 29, 2009, Plaintiff sued Defendant Steel Horse Saloon V along with
8 twelve other business entities spread across the United States which allegedly also used the
9 STEEL HORSE mark, alleging federal and common law trademark infringement, unfair
10 competition, and trademark dilution.  (*See* Dkt. # 1.)  In the Complaint, Plaintiff alleges that
11 Defendant Steel Horse Saloon V "has its business advertised on the internet at
12 http://www.clubplanet.com/Venues/108438/Marion/Steel-Horse-Saloon, under the name
13 Steel Horse Saloon," and that this advertising is available to Internet users in Arizona.  (*Id.*
14 ¶ 18 and Ex. 10.)  The "advertisement" appearing on that website contains only the Ohio
15 address, Ohio telephone number, and some basic information about Defendant Steel Horse
16 Saloon V.[2]  (*See id.* Ex. 10.)

---

[1] Plaintiff presents no evidence that Defendant Steel Horse Saloon V is currently operating a restaurant/bar in Marion, Ohio.  The only evidence presented on the matter is that the Ohio SteelHorse Saloon restaurant has ceased operating.  (*See* Affidavit Joanna L. Yogerst, Dkt. # 76 at 16 (stating that Ms. Yogerst heard Greg Coble state that "he recently sold his Steel Horse Saloon under a condemnation proceeding.").)  Despite the seemingly inadmissible nature of this hearsay evidence, Plaintiff does not dispute the fact that Defendant Steel Horse Saloon V has ceased operating a restaurant/bar under the trade name SteelHorse Saloon.

[2] It is not apparent that Defendant Steel Horse Saloon V is responsible for the information provided on the http://www.clubplanet.com website.  Appearing below Defendant Steel Horse Saloon V's address and phone number on the website is the following language: "Is This Your Business?"  (Dkt. # 1 Ex. 10.)  The Court, however, need not resolve this question and will presume that Defendant Steel Horse Saloon V is responsible for the information.

1  On February 3, 2009, default was entered by the Clerk of the Court against Defendant
2  Steel Horse Saloon V due to its failure to plead or otherwise defend.  (Dkt. # 65.)  On
3  February 27, 2009, Plaintiff filed its Motion for Default Judgment seeking monetary and
4  injunctive relief against the Defendant Steel Horse Saloon V.  (Dkt. # 72.)

5  On March 26, 2009, the Court scheduled an evidentiary hearing and instructed
6  Plaintiff "to be prepared to present the evidentiary basis supporting service on and personal
7  jurisdiction over Defendant Steel Horse Saloon V." (Dkt. # 75 at 3.)  Although Plaintiff filed
8  one affidavit and one exhibit on March 30, 2009 (Dkt. # 76), Plaintiff did not present any
9  further evidence supporting service of process or personal jurisdiction at the evidentiary
10 hearing on April 2, 2009.  (*See* Dkt. # 77.)

**DISCUSSION**

**I.     Service of Process**

13 "In deciding whether to grant default judgment, a court must first assess the adequacy
14 of the service of process on the party against whom default is requested." *Bank of the West*
15 *v. RMA Lumber, Inc.*, No. C 07-16469, 2008 WL 1474650, at *2 (N.D. Cal. June 17, 2008)
16 (quotation omitted). "A federal court does not have jurisdiction over a defendant unless the
17 defendant has been served properly[.]" *Direct Mail Specialists, Inc. v. Eclat Computerized*
18 *Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988) (citing *Jackson v. Hayakawa*, 682 F.2d 1344,
19 1347 (9th Cir. 1982)); *see also Mason v. Genisco Tech. Corp.*, 960 F.2d 849, 851 (9th Cir.
20 1992) ("A person is not bound by a judgment in a litigation to which he or she has not been
21 made a party by service of process."); *Hilgeman v. Am. Mortgage Sec., Inc.*, 196 Ariz. 215,
22 218, 994 P.2d 1030, 1033 (Ct. App. 2000) ("If a defendant is not properly served with
23 process, any resulting judgment is void and must be vacated upon request.") (citations
24 omitted).

25 In this case, there is no dispute that on January 6, 2009, Plaintiff effectuated service
26 of process upon Greg Coble, the husband of Debbie Coble, while the couple were
27 temporarily in Arizona.  (*See* Dkt. # 61.)  Nevertheless, Mr. Coble, in his individual capacity,

- 3 -

1 is not a defendant in the present suit. Plaintiff argues only that Mr. Coble was an agent of
2 Defendant Steel Horse Saloon V when he was served.[3]  (Dkt. # 76 at 9.)

Federal Rule of Civil Procedure 4(h) requires that:

> [A] domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served . . . in the manner prescribed by Rule 4(e)(1) for serving an individual; or . . . by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process . . . .

Rule 4(e)(1) permits service to be effectuated in compliance with state service of process law. Fed. R. Civ. P. 4(e). Plaintiff, however, does not argue that service was accomplished pursuant to Arizona law. Nor does Plaintiff argue that Mr. Coble was an agent authorized by appointment or by law to receive service of process. Service of process upon Defendant Steel Horse Saloon V is effective, then, only if Mr. Coble is an officer, a managing agent, or general agent of Defendant.

It appears from Ms. Yogerst's affidavit that the business entity Steel Horse Saloon V is no longer operating a restaurant/bar under the trade name SteelHorse Saloon. Consequently, it is unclear whether the business entity Steel Horse Saloon V is even in existence at the present time with officers and agents capable of being served. At the evidentiary hearing, Plaintiff failed to clarify the issue, instead representing to the Court that Plaintiff does not have much information about Steel Horse Saloon V.

---

[3]To the extent that Plaintiff could rely on an alternative theory supporting effective service of process, it is waived for failure to present the argument to the Court. *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("Our circuit has repeatedly admonished that we cannot manufacture arguments [for a party] . . . . Rather, we review only issues which are argued *specifically and distinctly* . . . .") (internal quotations omitted and emphasis added). If an argument is not properly argued and explained, the argument is waived. *See, e.g., id.* at 929-30 (holding that a party's argument was waived because "[i]nstead of making legal arguments," the party simply made a "bold assertion" of error, with "little if any analysis to assist the court in evaluating its legal challenge"); *Hibbs v. Dep't of Human Res.*, 273 F.3d 844, 873 n.34 (9th Cir. 2001) (finding that an assertion of error was "too undeveloped to be capable of assessment" and thus waived).

- 4 -

Regardless of whether Steel Horse Saloon V is presently in existence, however, Plaintiff fails to present evidence sufficient to establish that Mr. Coble is either an officer, general agent, or managing agent of Defendant. The only evidence submitted at all by Plaintiff is the affidavit of Joanna Yogerst and the State of Ohio Application and Certificate of trade name registration indicating that Debra Cole is the applicant and registrant of the SteelHorse Saloon trade name. (*See* Dkt. # 76 Ex. A, B.) The fact that Ms. Coble is the registrant of the SteelHorse Saloon trade name, however, is not probative of whether Mr. Coble is an officer, general agent, or managing agent of Defendant Steel Horse Saloon V. Additionally, Ms. Yogerst's affidavit contains no evidence bearing on whether Mr. Coble is an officer, general agent, or managing agent of Defendant. The only evidence that seems to bear on the matter is Mr. Yogerst's statements that she "heard Greg Coble say . . . [that the Cobles] owned a Steel Horse Saloon for about five years in Marion, Ohio." (Dkt. # 76 Ex. A ¶ 3.) But she further specifies that Mr. Coble said that he had previously sold the entity pursuant to a condemnation proceeding. If so, it is not apparent how he could still be an officer, general agent, or managing agent as of January 6, 2009. Even if Mr. Coble's statement were admissible, therefore, such a statement is insufficient to support the conclusion that Greg Coble is or was an officer, general agent, or managing agent of Defendant.

In sum, despite the briefing and evidence submitted on the matter, Plaintiff has yet to demonstrate service of process of the summons and complaint in accordance with the requirements of Federal Rule of Civil Procedure 4. Consequently, an entry of default judgment against Defendant would be improper.

**II.     Jurisdictional Standard for Default Judgment and Personal Jurisdiction**

Alternatively, an entry of default judgment against Defendant would be improper because the Court lacks personal jurisdiction over the business entity Steel Horse Saloon V. In the Complaint, Plaintiff appears to allege that the Defendant's advertising alone gives rise to minimum contacts between Defendant and the State of Arizona sufficient for this Court to exercise personal jurisdiction. However, in light of the Court's prior ruling on that matter

1  as it pertains to similar defendants (*see* Dkt. # 69), Plaintiff now appears to assert that the
2  Court may exercise general jurisdiction over Defendant Steel Horse Saloon V due to Greg
3  and Debbie Coble's contacts with Arizona.

4  When considering whether to enter a default judgment, a court has "an affirmative
5  duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172
6  F.3d 707, 712 (9th Cir. 1999) ("To avoid entering a default judgment that can later be
7  successfully attacked as void, a court should determine whether it has the power, i.e., the
8  jurisdiction, to enter judgment in the first place."); *see also Williams v. Life Sav. & Loan*, 802
9  F.2d 1200, 1203 (10th Cir. 1986) ("In reviewing its personal jurisdiction . . . the court
10 exercises its responsibility to determine that it has the power to enter the default judgment.").
11 "[W]hen a court is considering whether to enter a default judgment, it may dismiss an action
12 *sua sponte* for lack of personal jurisdiction." *In re Tuli*, 172 F.3d at 712.  Where there are
13 questions about the existence of personal jurisdiction, however, a court should allow the
14 plaintiff the opportunity to establish that jurisdiction is proper. *Id.* at 713.  Accordingly, on
15 April 2, 2009, the Court conducted an evidentiary hearing in which Plaintiff was directed to
16 "be prepared to present the evidentiary basis supporting . . . personal jurisdiction over
17 Defendant Steel Horse Saloon V."  (Dkt. # 75 at 3.)  Despite submitting an affidavit and an
18 exhibit prior to the hearing, Plaintiff did not present any additional evidence at the hearing
19 supporting jurisdiction over Defendant.

20 "The party seeking to invoke the court's jurisdiction bears the burden of establishing
21 that jurisdiction exists." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (citing *Data
22 Disc, Inc. v. Sys. Tech. Assocs.*, 557 F.2d 1280, 1285 (9th Cir. 1977)).  "Personal jurisdiction
23 over an out-of-state defendant is appropriate if the relevant state's long arm-statute permits
24 the assertion of jurisdiction without violating federal due process." *Schwarzenegger v. Fred
25 Martin Motor Co.*, 374 F.3d 797, 800-01 (9th Cir. 2004).  Because Arizona's long arm statute
26 is co-extensive with federal due process requirements, the jurisdictional analyses under
27 Arizona law and federal due process are the same. *See id.* at 801; *Terracom v. Valley Nat'l
28 Bank*, 49 F.3d 555, 559 (9th Cir. 1995); Ariz. R. Civ. P. 4.2(a).  Therefore, absent traditional

- 6 -

1 bases for personal jurisdiction (*i.e.*, physical presence,[4] domicile, and consent), the Due
2 Process Clause requires that nonresident defendants have certain "minimum contacts" with
3 the forum state such that the exercise of personal jurisdiction does not offend traditional
4 notions of fair play and substantial justice. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310,
5 316 (1945).

---

[4] Based on the fact that Mr. Coble was served with the summons and complaint while physically present in Arizona, the Court alerted Plaintiff to the physical presence theory for establishing personal jurisdiction, which was most recently set forth by the Supreme Court in *Burnham v. Super. Court of Cal.*, 495 U.S. 604, 619 (1990). (Dkt. # 75 at 3.) The Court directed Plaintiff to file a memorandum with the Court "providing legal authority supporting . . . the conclusion that service upon a business entity's owners in a state is sufficient to grant personal jurisdiction over the business entity itself" under the physical presence doctrine. (*Id.*) In its memorandum, however, Plaintiff failed to make a single argument or provide any legal authority supporting application of the physical presence doctrine to this case. Consequently, to the extent that Plaintiff could have argued for its application, those arguments are waived. *See supra* n.3.

Regardless, it appears that the physical presence theory is limited to circumstances where service of process was made upon a natural person who was physically within the forum state when served and who is himself or herself a defendant in the action. *See Burnham*, 495 U.S. at 619 (holding that, at least with respect to natural persons, in-state service of process always creates general jurisdiction over the person served); *Nehemiah v. Athletics Cong. of the U.S.A.*, 765 F.2d 42, 47 (3d Cir. 1985) (holding, pre-*Burnham*, that "it is undisputed that mere service on a corporate agent cannot establish personal jurisdiction without a minimum contact inquiry" and that "even if the [Supreme Court] were to acknowledge the . . . [transient jurisdiction] doctrine and thereby carve a *sui generis* niche over the individual who purposefully enters the jurisdiction and is served," it would not extend to permitting personal jurisdiction over business entities whose agent is physically present in a forum when served); *C.S.B. Commodities, Inc. v. Urban Trend (HK) Ltd.*, No. 08 cv 1548, 2009 WL 57455, at *10 (N.D. Ill. Jan. 7, 2009) (collecting cases in which courts have "come to the conclusion that service of process on an agent of a foreign corporation is insufficient, by itself to confer personal jurisdiction"); 4A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1103 (3d ed. 2002) ("Service made upon a corporation, partnership, or other unincorporated association simply by delivering process to a corporate or comparable officer who happens to reside or be physically present in the state at the time the documents are served will not be effective to establish in personam jurisdiction, unless that entity also is doing business so as to be amenable to service of process and the assertion of jurisdiction in the forum state.").

1       "In determining whether a defendant had minimum contacts with the forum state such that the exercise of jurisdiction over the defendant would not offend the Due Process Clause, courts focus on 'the relationship among the defendant, the forum, and the litigation.'" *Brink v. First Credit Res.*, 57 F. Supp. 2d 848, 860 (D. Ariz. 1999) (citing *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). If a court determines that a defendant's contacts with the forum state are sufficient to satisfy the Due Process Clause, then the court must exercise either "general" or "specific" jurisdiction over the defendant. *See Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414-15 nn.8-9 (1984); *Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995). General jurisdiction refers to the authority of a court to exercise jurisdiction even where the cause of action is unrelated to the defendant's contacts with the forum. *Helicopteros*, 466 U.S. at 408. Specific jurisdiction refers to the authority of a court to exercise jurisdiction when a suit arises out of or is related to the defendant's contacts with the forum. *Id.* The nature of the defendant's contacts with the forum state, therefore, will determine whether the court exercises general or specific jurisdiction over the defendant. *Id.*

**A.     General Jurisdiction**

      Plaintiff appears to contend that the Court may exercise general jurisdiction over Defendant because "this Defendant's proprietors were served in Phoenix, AZ [and] admitted to Plaintiff's personnel to frequently visiting here to visit family and property." (Dkt. # 71 at 9.)

      A court may assert general jurisdiction over a defendant if the defendant engages in "substantial" or "continuous and systematic" business activities, *Helicopteros*, 466 U.S. at 416 (citing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 446-47 (1952)), that "approximate physical presence" in the forum state, *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000) (explaining that the following factors are to be considered in determining whether general jurisdiction may be exercised: "whether defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there"). *See also Brand*

- 8 -

*v. Menlove Dodge*, 796 F.2d 1070, 1073 (9th Cir. 1986) (collecting cases where general jurisdiction was denied despite the defendants' significant contacts with the forum states)). Here, Plaintiff argues in support of general jurisdiction over the defaulted defendants, concluding that the facts show "continuous and systematic contacts with the forum state." (Dkt. # 72 at 9.)

The only jurisdictional facts Plaintiff alleges or for which it provides evidence are: (1) Defendant advertised on the Internet and its advertising was available to Internet users in Arizona; (2) Defendant's alleged proprietors, Greg and Debbie Coble, visit family and property in Arizona; and (3) the Cobles used to live in Arizona.[5] (*See* Dkt. ## 1, 72.)  It is uncontested, however, that Defendant's place of business was in Marion, Ohio, and Plaintiff does not allege that Defendant has ever engaged in business transactions or made sales in Arizona.  Plaintiff does not allege or argue that Defendant owns property in Arizona, owes taxes in Arizona, or maintains offices, employees, telephone numbers, Post Office boxes or bank accounts in Arizona.  Nor does Plaintiff allege or argue that Defendant is registered or licensed to conduct business in Arizona, or that it has designated an agent for service of process in Arizona.  The Court cannot exercise general jurisdiction over Defendant because its contacts neither qualify as "substantial" nor "continuous and systematic" so as to approximate its physical presence in Arizona.  Therefore, while Defendant may have facilitated advertising which was available in Arizona, it was not doing business in Arizona, and so while it may have "stepped through the door, there is no indication that [they have] sat down and made [themselves] at home."  *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1125 (9th Cir. 2002); *see also Gator.Com Corp. v. L.L. Bean*, 341 F.3d 1072, 1079 (9th Cir. 1997) ("This test requires both that the party in question

---

[5]Despite the allegations that Greg and Debbie Coble are Defendant's "proprietors," Plaintiff has failed to present admissible evidence to substantiate this contention. However, because this factual contention does not affect the Court's jurisdictional analysis, the Court declines to make any findings on the matter and will assume, for purposes of personal jurisdiction, that Greg and Debbie Coble had or have some sort of ownership interest in Defendant.

- 9 -

1  clearly do business over the Internet, and that the Internet business contacts with the forum
2  state be substantial or continuous and systematic.") (citations and quotation omitted); *GTE*
3  *New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1349-50 (D.C. Cir. 2000) (stating
4  that mere operation of an interactive website "does not by itself show any persistent course
5  of conduct by defendants in the [forum state]").

6        This conclusion is unaffected by the minimal Arizona contacts of the Cobles. Even
7  if the Coble's contacts could be imputed to Defendant Steel Horse Saloon V for purposes of
8  jurisdiction – a proposition that Plaintiff has failed to establish – they are not sufficient to
9  subject Defendant to general jurisdiction. Specifically, it is simply not relevant to the inquiry
10 whether the Cobles *used to* live in Arizona. Additionally, the Coble's personal visits to see
11 family in Arizona and the Coble's personal ownership of property in Arizona do not amount
12 to the "substantial" and "continuous and systematic" contacts necessary for the Court to
13 exercise general jurisdiction over Defendant.

14       Therefore, Plaintiff has not made a showing of jurisdictional facts sufficient for the
15 Court to exercise general jurisdiction over Defendant Steel Horse Saloon V.

16       **B.**    **Specific Jurisdiction**

17       The allegations of the Complaint appear to premise personal jurisdiction solely on
18 Defendant's alleged Internet advertising, which is available to Internet users in Arizona.
19 This basis, however, is insufficient to confer personal jurisdiction over Defendant Steel
20 Horse Saloon V for the same reason that it is insufficient to confer jurisdiction over the other
21 defendants previously dismissed in this matter. (*See* Dkt. # 69 (holding that passive Internet
22 advertising, absent evidence of express aiming of the advertising at Arizona, is an insufficient
23 basis for the Court to exercise specific jurisdiction).)

24       Plaintiff also contends that specific jurisdiction may be exercised over Defendant
25 because the Cobles "advertis[ed] ownership of a Steel Horse Saloon" when they visited
26 Arizona in January of 2009. Plaintiff argues that "Defendant['s] agents' visit advertising
27 ownership of a STEEL HORSE SALOON fits this jurisdictional definition, just as if these
28 agents of the Defendant were involved in [an] automobile accident . . . in Arizona during

- 10 -

their visit . . . ." (Dkt. # 76 at 7.) Nevertheless, in her affidavit, Ms. Yogerst states only that she heard Greg Coble say that "[The Cobles] owned a Steel Horse Saloon for about 5 years in Marion, Ohio." (Dkt. # 76 Ex. A ¶ 3.) Ms. Yogerst also states that she heard Mr. Coble say that "he recently sold his Steel Horse Saloon under a condemnation proceeding." (*Id.* Ex. A ¶4.) Plaintiff characterizes Mr. Coble's statements, which were made in Arizona, as an independent act of advertising sufficient on its own to impose liability under the Lanham Act and sufficient on its own to support personal jurisdiction in Arizona.

In the Ninth Circuit, specific jurisdiction may be exercised only if: (1) the defendant *purposefully avails* himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws, or purposely directs conduct at the forum that has *effects* in the forum; (2) the claim *arises out of* the defendant's forum-related activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice; i.e., it is *reasonable*. *See Bancroft*, 223 F.3d at 1086-87 (citing *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 417 (9th Cir. 1997)); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-76 (1985).

Even if Mr. Coble's statement could be characterized as advertising (which is doubtful given that the statement seems to indicate that the Steel Horse Saloon in Marion, Ohio, is no longer in operation), and even if Mr. Coble's statement could somehow be imputed to Defendant Steel Horse Saloon V, it is insufficient to support personal jurisdiction over Defendant. First, Mr. Coble's statement is insufficient to constitute Defendant Steel Horse Saloon V's purposeful availment of the privileges of conducting business in Arizona. Nor would the exercise of jurisdiction on that basis comport with notions of fair play and substantial justice. Likewise, unlike the situation in which personal jurisdiction may be exercised over a non-resident negligent driver in Arizona for claims "arising out of" an automobile accident occurring in the state, Plaintiff's lawsuit cannot be said to "arise out of" Mr. Coble's comment, which was made over two months after the Complaint was filed.

Additionally, Mr. Coble's comment that he *used to* own a Steel Horse Saloon in Ohio seems to cut against both the notion that Mr. Coble *is* the authorized agent of such a business

1 and the notion that in January of 2009 Mr. Coble was advertising for the now-defunct
2 establishment by mentioning his previous ownership of it.  During the evidentiary hearing,
3 Counsel asserted that in mentioning his past ownership of the business, Mr. Coble was using
4 the STEEL HORSE mark to solicit potential customers from Ohio present in Phoenix to
5 support Ohio-based teams in college bowl games.  Nevertheless, it is difficult to understand
6 how Plaintiff could lose the business of Ohio residents, especially to the Cobles' now defunct
7 establishment.

8 In attempting to comprehend such arguments, the Court sympathizes with Alice, who
9 upon reading "Jabberwocky," observed: "[I]t's rather hard to understand! . . . Somehow it
10 seems to fill my head with ideas – only I don't exactly know what they are!" Lewis Carroll,
11 *Through the Looking-Glass and What Alice Found There* 30-31 (1899) (internal quotations
12 omitted).  What such ideas are not, however, is any notion that Plaintiff has somehow
13 established specific jurisdiction over Defendant Steel Horse Saloon V predicated upon Mr.
14 Coble's comment.

15 In sum, Plaintiff has made no showing of jurisdictional facts sufficient for the Court
16 to exercise specific jurisdiction over Defendant Steel Horse Saloon V.

## CONCLUSION

18 Plaintiff has not established either that Defendant Steel Horse Saloon V was properly
19 served or that the personal jurisdiction may be exercised over Defendant.

20 **IT IS THEREFORE ORDERED** that Plaintiff's Motion for Default Judgment (Dkt.
21 # 72) is **DENIED**.

22 **IT IS FURTHER ORDERED** that Defendant Steel Horse Saloon V is **DISMISSED**
23 for failure to serve and lack of personal jurisdiction.

24 **IT IS FURTHER ORDERED** that the Clerk of the Court is directed to mail a copy
25 of this Order to Greg and Debbie Coble at 893 Cheney Ave., Marion, OH 43302.

26 / / /
27 / / /
28 / / /

1 **IT IS FURTHER ORDERED** that Plaintiff show cause as to why the Court should
2 not dismiss Defendants Steel Horse Saloon III, Steel Horse Pub & Grill, and The Steel Horse
3 Saloon I, pursuant to Federal Rule of Civil Procedure 4(m) for failure to timely serve.
4 Plaintiff is directed to file a memorandum doing so by **April 17, 2009**. Failure to respond
5 will be considered as consent to the dismissal of these parties.

6 DATED this 9th day of April, 2009.

*G. Murray Snow*
United States District Judge